**Mary Lou MIRO, Appellant,**

v.

**David L. GARNER, Appellee.**

**No. 13–00–181–CV.**

Court of Appeals of Texas,
Corpus Christi.

July 12, 2001.

Rehearing Overruled Aug. 23, 2001.

---

Gregory A. Whittmore, Dallas, for appellant.

Michael Lee Hoffman, Dallas, for appellee.

Before Justices DORSEY, CASTILLO, and HILL.[1]

## OPINION

HILL, Senior Justice (Assigned).

Mary Lou Miro appeals from a judgment, entered following a jury verdict, that she take nothing in her claim against David L. Garner for damages to the apartment which he was leasing from her. With respect to a counterclaim brought by Garner, the judgment awarded damages in his favor based upon jury findings that Miro retained some of his security deposit in bad faith. In four issues, Miro contends that the evidence is legally, or, alternatively, factually insufficient to support the jury's finding that she wrongfully retained $1,267.05 of Garner's security deposit in bad faith. She contends in a fifth issue that the jury's finding that Garner did not fail to comply with the terms of their lease agreement is against the great weight of the evidence and is manifestly unjust.

We affirm because the evidence is sufficient to support the jury's findings that Miro wrongfully retained $1,267.05 of Garner's security deposit in bad faith and the jury's failure to find that Garner failed to comply with the lease agreement is not contrary to the overwhelming weight of the evidence and is not manifestly unjust.

■ Miro contends in issues one, two, three, and four that the evidence is legally and factually insufficient to support the jury's finding that she wrongfully retained Garner's security deposit in bad faith. In determining whether there is no evidence of probative force to support a jury's finding, we must consider all of the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable inference that could be made from the evidence in that party's favor. *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). In this review, we disregard all evidence and inferences to the contrary. *See Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex. 1990). We will sustain a no-evidence point of error when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence conclusively establishes the opposite of the vital fact. *See Havner*, 953 S.W.2d at 711. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.; Burroughs Wellcome Co.*, 907 S.W.2d at 499.

■ In reviewing a factual insufficiency issue, we consider and weigh all of the evidence and set aside the verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Garner leased a townhouse from Miro. The written lease entered into by Miro and

1. Senior Justice John Hill assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

Garner provided that when Garner moved out, he was to surrender the premises in the same or better condition as it was when the term of the lease began, ordinary use and wear excepted. The lease also provided that Miro could make deductions from Garner's security deposit for any damage done to the premises including, but not limited to, insufficient light bulbs, scratches, burns, stains, holes in walls, as well as damages to personal property, except that there were to be no deductions for ordinary wear and tear. The lease did not define ordinary wear and tear.

Garner renewed his one-year lease for a second year. Following the second year he became a month-to-month tenant. Miro gave him notice when she decided to sell the townhouse. When Garner came home late in the evening of the night before the closing on the sale of the townhouse, he discovered extensive flooding that appeared to be coming from the powder room, but he could not turn off the water. The fire department succeeded in cutting off the water, but only after there had been extensive damage to the townhouse.

Following the flood and resulting damage, the sales price for the townhouse was reduced by $5,200 to cover the cost of the necessary repairs. Garner requested the return of his security deposit, but Miro retained it due to the damage to the premises. Within thirty days of Garner's request for the return of his security deposit, Miro provided him with a written description and itemized list of the damages and the deductions she had made from his security deposit. Miro proceeded to sue Garner for the damages to the townhouse, while he counterclaimed that Miro had retained his security deposit in bad faith. Based upon the jury's verdict, the trial court's judgment provided that Miro take nothing by her claim for damages, but that Garner recover damages for Miro's retention of a portion of his security deposit.

In determining the sufficiency of the evidence, we must first determine whether Miro had any basis under her agreement with Garner for retaining his security deposit. The lease authorized Miro to make deductions from Garner's security deposit for damage "done to the premises," then proceeded to list several examples which all related to damage or loss likely to be caused by a tenant or his guest.

■■■ As we interpret the lease, Miro was only authorized to make deductions from the security deposit for damage done to the premises through the intentional act or negligence of either the tenant or a guest of the tenant, and was not authorized to make deductions for the flooding where there was no indication that the flooding was caused by the intentional or negligent act of Garner or any guest of Garner. This interpretation is consistent with the common-law rule that a lease contract of the nature entered into by Miro and Garner does not make the tenant an insurer of the premises who is indebted to the landlord for damages which the tenant or a guest of the tenant did not cause. *See Miller, Billups & Co. v. Morris, Ragsdale & Simpson,* 55 Tex. 412, 421–22 (1881); *Norman v. Stark Grain & Elevator Co.,* 237 S.W. 963, 966 (Tex.Civ. App.—Dallas 1922, writ ref'd). We know of no provision of the Texas Property Code that would cause Garner to be responsible for such damage. To the contrary, the legislature seemed to intend to carry this rule forward. *See* TEX. PROP.CODE ANN. § 92.054(b) (Vernon 1995). Consequently, Miro had no basis under the lease for withholding Garner's security deposit. We also note that although Miro informed Garner that she was retaining the security deposit because the damages were caused by Garner's failure to notify her of a prob-

lem with the plumbing fixture in question or to request repairs and by his failure to properly maintain the plumbing system, she has not referred us to any evidence that she presented at trial showing that the damages to the premises were caused by such failure. Because of the lack of evidence as to the only bases presented to Garner as to the reasons for retaining his security deposit, a reasonable jury could have concluded that Miro retained the security deposit in bad faith. We hold that the evidence is both legally and factually sufficient to support the jury's verdict that Miro retained Garner's security deposit in bad faith.

Miro relies upon the case of *Leskinen v. Burford*, 892 S.W.2d 135 (Tex.App.—Houston [14th Dist.] 1994, no writ). In that case the court held that a finding that the landlord acted in bad faith by not returning a security deposit was so against the overwhelming weight of the evidence as to be manifestly unjust and clearly wrong. *Id.* at 138. The court's opinion appears to be based upon evidence that the landlord was an amateur lessor; evidence that there was extensive damage to the residence; evidence that the lessor tried to make many of the repairs himself in order to save money; evidence of the mailing of the written itemization and the tenant's receipt of it; and evidence of an offer to refund a portion of the security deposit. *Id.* at 137–38. In the case at bar, it was shown that Garner received Miro's notice as to why she was retaining his security deposit, and there was some evidence that Miro is an amateur lessor. While there was extensive damage to the premises, there is no evidence that it was due to any negligence or fault of the lessee, although that was the basis given by Miro for her retention of the deposit. There is no indication that Miro attempted to do any of the repairs herself or made any offer to refund any portion of the deposit. We do not find *Leskinen* to be inconsistent with our opinion. We overrule Miro's contentions as presented in issues one, two, three, and four.

■ Miro asserts in issue five that the jury's findings that Garner did not fail to comply with the terms of the lease agreement are against the great weight of the evidence and are manifestly unjust. Miro appears to rely on the fact that the property was in a damaged condition rather than how it was when Garner leased it, with the exception of ordinary wear and tear, and the fact that Garner neither repaired the running commode that ultimately leaked nor notified Miro and requested that she repair it. As noted earlier in this opinion, Garner had no obligation to Miro for expenses necessary to repair the damages in this case unless they were caused by his negligence or possibly that of his guests, and there is no evidence that they were so caused. With respect to the running commode, the buyer's inspector testified that the commode was running when he made the inspection. Miro indicated that she read the inspector's report more than a week before the flood. Miro's real estate agent indicated that she heard the toilet running, but did not notify Miro. Garner said that he rarely used the commode in question, that he only heard the water running a couple of times. He related that he did not notify Miro because it was not a problem since it stopped running when he jiggled the handle. When asked if it were not true that there was no handle on the commode, but a push button, Garner replied, "Yeah, you kind of pushed it. It was a trigger that lifted the thing." We hold that the jury's answer that Garner did not fail to comply with the lease agreement was not against the overwhelming weight of the evidence and was not manifestly

unjust. We overrule Miro's contentions in issue five.

The judgment is affirmed.