Tracy HARDY, Appellant,

v.

**11702 MEMORIAL, LTD; British American Properties of Houston, Inc.; and Thomas F. Noons, Appellees.**

No. 01–02–00758–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 15, 2004.

Rehearing Overruled Oct. 12, 2004.

Russell W. Hall, Bellaire, TX, for Appellant.

Bruce D. Mosier, Mosier & McEnrue, P.C., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

**1.** Landlord, 11702 Memorial, Ltd. is a Texas Limited Partnership with British American Properties of Houston, Inc., as its general partner. Thomas Noons is the president of British American.

**OPINION**

ELSA ALCALA, Justice.

This is a landlord-tenant dispute. The tenant, appellant, Tracy Hardy, sued her landlord, appellees, 11702 Memorial, Ltd.; British American Properties, Inc.; and Thomas F. Noons,[1] for failure to return her $20,250 residential security deposit. Landlord counterclaimed for the entire $20,250 security deposit plus $14,017 in additional damages allegedly due to tenant's breach of the lease. After a bench trial, the court entered a take-nothing judgment against both landlord and tenant. Tenant has presented six issues in this appeal. In her first two issues, tenant contends that the evidence is factually insufficient to support the trial court's ruling that tenant was not entitled to the return of any part of her security deposit. In her third issue, tenant challenges the trial court's conclusion of law that she did not prove her case by a preponderance of the evidence. In her fourth issue, tenant contends she should have been awarded statutory damages because "Landlord did not meet its burden of proving good faith" under section 92.109(d) of the Texas Property Code. In her fifth issue, tenant asserts that the trial court erred in failing to find that landlord sold the property at 11702 Memorial to Noons, its agent, and that both are therefore jointly and severally liable to her for return of the security deposit. In her sixth issue, tenant contends that the trial court erred in concluding that British American, the general partner of 11702 Memorial, Ltd., was not liable to her. We address only issues four through six because they are dispositive. We reverse and remand.

## Background

Tenant leased a residence from landlord, signed a lease agreement, provided a security deposit of $20,250, but never occupied the dwelling or paid the first month's rent, and thus breached the lease. Landlord leased the residence to another tenant within a few days of appellant's breach and recovered rental payments from the new tenant. Landlord declined to return any portion of the $20,250 security deposit to tenant and claimed additional damages of $14,017.

The trial court ruled that landlord and tenant each take nothing and made the following pertinent findings of fact:

1. On or about September 19, 2000, [tenant] and [landlord] entered into a written residential lease for the property known as 11702 Memorial Dr., in Houston, Harris County, Texas, requiring a Security Deposit of $6,500.00 (one month's rent) and monthly rental payments of $6,500.00 each, commencing on October 1, 2000.

2. [Landlord] then determined that [tenant] had bad credit.

3. Thereafter, [landlord] and [tenant] amended the lease contract, increasing the security deposit agreement.

4. [Tenant] paid to [landlord] the sum of $20,250.00 as Security Deposit under the amended lease.

5. [Tenant's] first month rent of $6,500.00 was due and payable under the amended lease on October 1, 2000.

6. [Landlord] requested that the $6,500.00 due and payable as the first month's rent be paid by [tenant] to Greenwood King Realty.

7. Greenwood King Realty was entitled to a commission of $6,500.00 (one month's rent under the lease contract) from [landlord] for its effort in leasing the property to [tenant].

8. On September 19, 2000, [tenant] wrote and delivered a check to Greenwood King Realty in the amount of $6,500.00, as requested by [landlord].

9. [Tenant's] $6,500.00 check (see Finding No. 8 above) was returned by the bank to Greenwood King Realty unpaid because [tenant] had previously closed the account on which it was written.

10. On September 29, 2000, [tenant] wrote to [landlord] stating, "Thank you for allowing me out of the lease at 11702 Memorial Drive...."

11. On October 1, 2000, [landlord] wrote to [tenant] denying that any such agreement had been made.

12. [Landlord] did not agree to allow [tenant] out of the lease.

13. [Landlord] then leased the property to a third party.

14. On October 9, 2000, [tenant's] counsel wrote to [landlord] requesting the return of the Security Deposit and stating that the letter should be considered as [tenant's] surrender of possession of the property to [landlord].

15. On October 9, 2000, [tenant] owed [landlord] rent.

16. There is no controversy concerning the amount of rent owed.

17. On November 8, 2000, [landlord] wrote to [tenant's] attorney, describing and itemizing deductions from the Security Deposit and stating that after such deductions, [tenant] owed [landlord] an additional $14,017.00.

The court also made the following pertinent conclusions of law:

1. [Tenant] did not prove her case by a preponderance of the evidence.
2. [Tenant] was in default of the terms of the lease agreement between her and [landlord] when her request for return of the Security Deposit was made.
3. [Landlord] was not required to give [tenant] a description and itemization of deductions from the Security Deposit.
4. [Landlord's] description and itemization of deductions from the Security Deposit was timely made.
5. [Landlord] is not liable to [tenant] for the refund of any part of the Security Deposit.
6. [Landlord] is not liable to [tenant] for damages.
7. [Landlord] is not liable to [tenant] for attorney fees.

### Landlord's Bad Faith

In her fourth issue, tenant contends landlord is not entitled to retain any portion of her security deposit because landlord acted in bad faith in failing to return it. Under the Property Code, no landlord has the right to retain any deposit it has refused, in bad faith, to return.

Section 92.104 of the Property Code governs the return of security deposits. It provides that, before returning a security deposit, a landlord "may deduct from the deposit damages and charges for which the tenant is legally liable under the lease or as a result of breaching the lease." TEX. PROP.CODE ANN. § 92.104(a) (Vernon 1995). If the landlord retains all or part of the deposit, it must give the tenant any balance due, together with a written description and itemized list of all deductions. *Id.* § 92.104(c).

Section 92.109(a) of the Property Code governs a landlord's bad faith. It provides that, in a suit to recover a security deposit, a landlord who retains a deposit in bad faith is liable to the tenant for $100, plus three times the portion of the deposit wrongfully withheld, and the tenant's reasonable attorneys' fees. TEX. PROP.CODE ANN. § 92.109(a) (Vernon 1995). An additional result of a landlord's retention of a security deposit in bad faith is the forfeiture of the right to retain any portion of the security deposit. *Id.* § 92.109(b)(1). Moreover, a landlord who fails either to return a security deposit or to provide a written description and itemization of deductions on or before the 30th day after the tenant surrenders possession of the property is presumed to have acted in bad faith. *Id.* § 92.109(d).

A tenant may establish a prima facie case of bad faith by showing that the landlord failed to refund the deposit within 30 days or that it failed to provide the itemized list of deductions within 30 days. *Wilson v. O'Connor,* 555 S.W.2d 776, 780–81 (Tex.Civ.App.-Dallas 1977, writ dism'd). Bad faith implies an intention to deprive the tenant of a lawfully due refund. *Id.* at 780. To defeat the presumption, the landlord must prove his good faith, *i.e.,* "honesty in fact in the conduct or transaction concerned." *Id.* at 780–81. Absent rebutting evidence, the presumption that the landlord acted in bad faith by failing to return the deposit or provide a written description and itemization of deductions within 30 days after surrender compels a finding of bad faith. *Id.* at 780.

Tenant pleaded that landlord acted in bad faith by retaining her entire security deposit and by failing to send her an itemized list of deductions for which she was legally liable within 30 days of her surrender of the dwelling. On appeal, she

contends the trial court's ruling that landlord was not liable to her is against the overwhelming weight of the evidence and is unjust.[2]

### Tenant's Prima Facie Proof of Bad Faith

Tenant's lease was to commence on October 2, 2000. The uncontradicted evidence establishes that she repudiated the lease on September 29, 2000 [3] and never occupied the premises. Landlord acknowledged its duty to mitigate damages and found a new tenant, whose lease commenced on October 3, 2000. On October 9, 2000, tenant's attorney gave landlord formal notice of "surrender" of the property [4] and a written statement of tenant's forwarding address for the purpose of refunding the security deposit, which triggered Landlord's obligation to return the deposit or give her a written description of the damages and charges for which she was liable within 30 days, *i.e.*, by November 8, 2000. *See* TEX. PROP.CODE ANN. §§ 92.103, 92.107 (Vernon 1995).

Neither tenant or landlord appeared or testified at trial. The trial consisted of documentary evidence, tenant's attorney's testimony, and landlord's deposition testimony. According to tenant's attorney's testimony, landlord kept the deposit and sent tenant a letter *dated* November 8, 2000, listing "deductions and offsets," by facsimile on November 26, 2000—six days after tenant sent landlord a draft petition in anticipation of this suit and well outside the 30 day limit for landlord's compliance with section 92.103. Landlord's November 26, 2000 facsimile listed deductions amounting to $34,267, or $14,017 more than tenant's $20,250 deposit, and included a demand for the difference. Tenant's attorney also testified that when he spoke to landlord on November 16, landlord acknowledged that, as of that time, he had not yet responded to tenant's request for the return of her security deposit. Landlord's deposition testimony only stated that the letter with the "deductions and offsets" was created on November 8, 2000, but did not reflect when the letter was actually sent. The uncontradicted evidence that landlord neither returned the deposit nor sent tenant an itemized list of deductions within 30 days of surrender establishes the presumption of landlord's bad faith under section 92.109(d) of the Property Code. The burden, therefore, shifted to landlord to prove its good faith in withholding the deposit by rebutting the presumption of

---

2. The trial court made no findings of fact regarding tenant's claim that landlord acted in bad faith. To the extent that a trial court does not issue findings of fact and conclusions of law to support its ruling, all facts necessary to support the judgment and supported by the evidence are implied. *See BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002); *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987). However, when, as here, the appellate record includes the reporter's and clerk's records, implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC Software Belg.,* 83 S.W.3d at 795. Implied findings of fact cannot be inferred when the evidence conclusively establishes the issue to be determined. *Otis Elevator Co.,* 734 S.W.2d at 666. We will sustain a factual

sufficiency challenge if, after viewing all the evidence, the evidence is so weak or the judgment so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

3. Tenant wrote to landlord stating, "Thank you for allowing me out of the lease ... per our conversation today 9–29–00 I[sic] putting it into writing to cancel our agreement. Please give a check to George my driver for the amount of $20,250...."

4. On October 9, tenant's attorney wrote to landlord stating, "Please accept this letter as notice of surrender...." *See* TEX PROP.CODE ANN. § 92.107.

bad faith. *See Wilson*, 555 S.W.2d at 780–81.

### Landlord's Burden of Proof of Good Faith

Under the plain language of section 92.104 of the Property Code, a landlord is

| | | |
|---|---|---|
| (1) First Months Rent | $ 6,500 | |
| (2) Commission Due | $ 6,500 | |
| (3) Lost Rents (3 days @ 213.5) | $ 641 | 10/2/00 to 10/5/00 |
| (4) Lost Rents (26 days @ 213.5) | $ 5,551 | 1/6/02 to 1/31/02 |
| (5) Lost Rents (one month) | $ 6,500 | 2/1/02 to 2/28/02 |
| (6) NSF Fee | $ 25 | |
| (7) Utilities | $ 1,100 | |
| (8) Make Ready | $ 950 | |
| (9) Cost of Re-letting | $ 6,500 | |
| **TOTAL** | $ 34,267 | |

The question under section 92.109(a) is whether landlord proved that each of the charges was made in good faith. *See Wilson*, 555 S.W.2d at 780.

■ In item (1), landlord deducted $6,500 for the first month's rent and in item (3), landlord deducted $641 dollars for lost rent for the 3 days between October 2, 2000 and October 5, 2000. These are duplicate charges for the same time period. Although landlord was lawfully entitled to one day's lost rent at $213.50, due to the time difference between October 2, 2000, when tenant's lease was set to begin, and October 3, 2000, when the replacement tenant's lease began, landlord did not limit its deductions to one day's lost rent, but rather attempted to recover by billing for additional days and by billing twice for the same time period. No evidence supports deductions for $6,500 for the first month's rent and deductions at $641 for lost three days rent.

entitled to deduct from a tenant's security deposit only those "damages and charges for which the tenant is *legally liable*." TEX. PROP.CODE ANN. § 92.104(a) (emphasis added). Landlord's November 26, 2000 facsimile itemized the following deductions and offsets from tenant's security deposit:

■ In item (2), Landlord demanded a $6,500 commission purportedly due from tenant for Greenwood King's efforts in securing tenant as a lessee. The lease, however, never mentioned that tenant would pay any commission to Greenwood King or to any other entity for its having secured her as a lessee. The lease states that it "contains the entire agreement between landlord and tenant and may not be changed except by written agreement." The record shows that landlord agreed to pay Greenwood King for finding a tenant to lease the property, but the lease agreement between tenant and landlord never incorporated that agreement. Greenwood King is not a party to this litigation. Landlord may not deduct from the security deposit funds that it is not lawfully entitled to keep under the lease.[5] *See* TEX. PROP.CODE ANN. § 92.104(a). No evidence supports landlord's entitlement to deduct commission fees from tenant's deposit.

■ In item (4), landlord claimed a deduction of $5,551 for future rent for 26

---

5. The trial court made no findings of fact concerning whether the deductions taken by landlord for Greenwood King were made in good or bad faith, but it did make a finding of fact number six that landlord requested that the $6,500 due and payable as the first

month's rent be paid by tenant to Greenwood King Realty. Nonetheless, the lease agreement itself never referenced any duty by tenant to pay Greenwood King for any commission, and thus, there is no evidence in the record to support the trial court's finding.

days in January 2002, and a deduction, in item (5), of $6,500 for future rent for the month of February 2002. Paragraph 24 of the lease permits landlord, upon tenant's breach, to accelerate all rents payable during the remainder of the lease. The record contains the replacement tenant's lease, which states a termination date of January 5, 2002 for the lease of the property, but also contains a provision to automatically renew on a month-to-month basis. Thus, no evidence in the record establishes landlord's loss of rent between the time the replacement tenant's initial lease period was scheduled to expire and the termination date of tenant's lease on February 28, 2002.[6] Therefore, landlord was not legally entitled to deduct items (4) and (5) from tenant's deposit. *See Stamp–Ad, Inc. v. Barton Raben, Inc.,* 915 S.W.2d 932, 936 (Tex.App.-Houston [1st Dist.] 1996, no writ) (explaining that in breach of contract action, measure of damages is just compensation for loss actually sustained). No evidence establishes that landlord incurred any loss of rent from tenant's breach between January 5, 2000 and February 28, 2002.

■ Although the lease expressly states that tenant will pay for utilities directly and landlord is not responsible for utilities, and although tenant never took possession of the property, landlord deducted $1,100 for utilities in item (7). Additionally, even though the lease required tenant to accept the premises "AS IS" and no other mention was made of any fees to prepare the property for tenant's arrival, landlord deducted in item (8) $950 for a "make ready" fee. No evidence establishes that landlord incurred any debts for utilities and make ready fees or that tenant was legally obligated under the lease to pay for the deductions.

■ Although item (9) deducted $6,500 for the cost of "re-letting," no evidence in the record established that the cost was for actual expenses to secure a replacement tenant, or costs for the time landlord took to secure the replacement tenant, or that either charge was reasonable. Landlord was only entitled to keep reasonable charges from the security deposit for actual "costs of re-letting, if Tenant is in default" according to the lease. The Property Code also confines deductions to actual expenses to secure a replacement tenant plus a reasonable amount for the landlord's time in securing the replacement when a tenant fails to occupy the dwelling on or before the commencement date of the lease. TEX. PROP.CODE ANN. § 92.1031(a), (b)(2) (Vernon Supp.2004). No evidence in the record addressed landlord's actual expenses in re-letting or whether any such expenses were reasonable.

■ Item (6) is a deduction for $25 for an NSF (non-sufficient funds) fee for tenant's returned check for her first month's rent. Landlord's deposition testimony established that tenant "bounced a check on me" and, according to the lease, tenant agreed to pay landlord $25 for each check returned by the institution on which it was drawn. The record, however, establishes that tenant wrote the check to Greenwood

---

6. Even if we were to assume that the replacement tenant's lease actually terminated on January 5, 2002, rather than continuing on a month-to-month basis, landlord would have had a continuing duty to attempt to mitigate his losses. Paragraph 24 obligates landlord to mitigate its damages, as does section 92.006 of the Property Code. Thus, landlord would have had to show that after the replacement tenant surrendered the property on January 5, if it did, and that it attempted but failed to secure a new tenant to resume the lease on January 5, 2000 until February 28, 2002. No evidence in the record addresses any of these issues.

King, rather than to landlord. Even though the record reflects that tenant wrote the first month's rent check to Greenwood King at landlord's direction, there is no evidence that landlord incurred any fees for the returned check tenant wrote to Greenwood King.

We conclude that there is no more than a scintilla of evidence that landlord was entitled to any of the deductions taken from the security deposit. Landlord's deductions from the security deposit were attempts to recover for items tenant was not legally liable for under the lease or the Property Code, and the deductions were not supported by evidence. To the extent the trial judge's findings are to the contrary, they are against the overwhelming weight of the evidence. There is no more than a scintilla of evidence that was provided by landlord to establish his good faith as rebuttal of the presumption of bad faith to which tenant was entitled under the Property Code. Thus, tenant established as a matter of law that landlord acted in bad faith by failing to return her security deposit and by failing to give her an itemization of deductions within 30 days of her surrender of the property.

 Relying on section 92.104(c) of the Property Code, landlord contends that it was not required to comply with section 92.104(a) because tenant owed rent when she surrendered possession of the premises and there was no controversy concerning the amount of rent owed. *See* TEX. PROP.CODE ANN. §§ 92.104(a), (c) (Vernon 1995). Although there is no dispute that tenant owed rent when she surrendered possession of the premises, there is plainly a controversy concerning the *amount* of

rent owed, as discussed above. The trial court's finding of fact that there was no controversy concerning the amount of rent owed is contrary to the overwhelming weight of the evidence and is clearly wrong and unjust. Additionally, the trial court's conclusion of law that landlord was not required to give tenant a description and itemization of deductions from the security deposit is also erroneous for the same reason.[7] Under the plain language of section 92.104, landlord's duty to return tenant's deposit was not excused.

 Finally, landlord argues that tenant breached various "covenants," including covenants to pay the first month's rent, to give 30 days' written notice of surrender, to return keys and access devices, and to pay late and insufficient fund fees. To the extent these alleged covenants are not dealt with above, they are preempted by the statutory rights and duties of a landlord and tenant toward each other under the Property Code as expressly stated in the Code, which provides for the preemption of all rights of landlords and tenants under contract, statutory law, and common law that are inconsistent with the purposes of subchapter 92 of the Property Code. *See* TEX. PROP.CODE ANN. § 92.061 (Vernon 1995). Section 92.006 of the Property Code expressly provides, "A landlord's duty or a tenant's remedy concerning security deposits, as provided by Subchapter C [section 92.101 *et seq.*], D, E, or G, respectively, may not be waived." TEX. PROP. CODE ANN. § 92.006(a) (Vernon 1995).

We sustain tenant's fourth issue.

### Joint and Several Liability

 In her fifth issue, tenant contends the trial court erred in failing to find that

---

7. We review a trial court's conclusions of law de novo as legal questions. *See BMC Software Belg.,* 83 S.W.3d at 794; *Connelly v. Paul,* 731 S.W.2d 657, 661 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.). Although

an appellant may not challenge a trial court's conclusions of law for factual sufficiency, we may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belg.,* 83 S.W.3d at 794.

landlord sold the property at 11702 Memorial to Noons, its agent, and that both are therefore jointly and severally liable to her for return of the security deposit. In her sixth issue, tenant contends the trial court erred in concluding that British American, the general partner of 11702 Memorial, Ltd., was not liable to her. We consider both issues together.

Section 92.105 of the Property Code provides that if the owner sells its interest in the premises, the new owner is liable for the return of security deposits from the date it acquires title to the premises, and the person who no longer owns an interest in the premises remains liable for a security deposit it received while it was the owner up to the time the new owner delivers to the tenant a signed statement specifying the dollar amount of the deposit and acknowledging that it has received the deposit and is responsible for it. Tex. Prop. Code Ann. § 92.105 (Vernon 1995).

The uncontradicted evidence establishes that on December 1, 2000, Noons, in his capacity as president of British American Properties of Houston, Texas, Inc., the general partner of landlord (11702 Memorial, Ltd.), sold the premises to himself. The record contains no evidence that Noons sent tenant a signed statement stating that he had received and was responsible for her security deposit. Therefore, both Noons and landlord are liable to tenant for any judgment entered in her favor on the security deposit.

█ The undisputed evidence also establishes that British American was the general partner of landlord. General partners are jointly and severally liable for the obligations of a limited partnership. *See* Tex.Rev.Civ. Stat. Ann. art. 6132a–1 § 4.03(b) (Vernon Supp.2004); Tex.Rev. Civ. Stat. Ann. art. 6132b § 3.04 (Vernon Supp.2004). Therefore, British American

is jointly and severally liable with landlord for any obligations of landlord.

We sustain tenant's fifth and sixth issues.

Because the foregoing issues are dispositive of this appeal, we decline to address tenant's first, second, and third issues.

## Conclusion

We hold that the trial court's implied finding that landlord proved its good faith in retaining tenant's security deposit is contrary to the overwhelming weight of the evidence and that tenant established as a matter of law landlord's bad faith in retaining her entire $20,250 security deposit and demanding $14,107 in additional damages. Therefore, tenant is entitled to recover jointly and severally from Defendants 11207 Memorial, Ltd.; British American Properties of Houston, Inc.; and Thomas F. Noons statutory damages under sections 92.109(a) and (b) of the Property Code in the amount of (1) $100, plus (2) her entire security deposit of $20,250 multiplied three times for a total of $60,750, plus (3) her reasonable attorney's fees.

We reverse and remand to the trial court with instructions that the court hold a hearing to determine the amount of tenant's reasonable attorney's fees and that it, thereafter, enter judgment in accordance with this opinion.