# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00655-CV

**A-TX Property Management, Appellant**

**v.**

**Jesus Rodriguez and Sandra Rodriguez, Appellees**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY, NO. C-1-CV-11-005496, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A-TX Property Management appeals the county court's judgment in favor of Jesus Rodriguez and Sandra Rodriguez,[1] acting pro se, that A-TX withheld a security deposit in bad faith in violation of section 92.109 of the Texas Property Code. *See* Tex. Prop. Code § 92.109(a) (landlord who in bad faith retains security deposit liable for amount equal to sum of $100, three times amount wrongfully withheld, and tenant's attorney's fees). A-TX challenges the legal and factual sufficiency of the evidence and the amount of damages awarded. For the reasons that follow, we affirm the county court's judgment conditioned on remittitur.

---

[1] We refer to the Rodriguezes individually by their first names for clarity.

**FACTUAL AND PROCEDURAL BACKGROUND**

In January 2009, the Rodriguezes leased a home from Shamrock Property Management and paid a security deposit in the amount of $1,200. The written lease agreement contained a provision titled "Move-In Condition" requiring the tenant to complete an "Inventory and Condition Form" (Move-In Report) within five days after the commencement date of the lease. The lease further provided that if the tenant failed to timely deliver a Move-In Report assessing the condition of the premises, the property would be deemed to be free of damages. The lease had an original expiration date of January 31, 2010. On February 1, 2010, the Rodriguezes and Shamrock entered into a lease extension, changing the expiration date to June 30, 2010. At some point, Shamrock transferred management responsibility to another company, which subsequently transferred management to A-TX. In August 2010, the Rodriguezes moved out, and a dispute arose regarding the refund of the security deposit. A-TX provided an itemized list of charges made against the security deposit and refunded the balance of $54.92. The Rodriguezes contended that A-TX wrongfully withheld the security deposit.

The Rodriguezes filed a claim in small claims court, and a default judgment was rendered in their favor in the amount of $2,770. After the small claims court denied A-TX's motion for new trial, A-TX appealed to the county court. In a do novo bench trial, the county court heard the testimony of the Rodriguezes, A-TX's office manager, and two A-TX employees who conducted property inspections of the Rodriguezes' home. The parties also offered exhibits including photographs, inspection reports, A-TX's itemized list of charges, invoices for repairs, a letter from Shamrock regarding the condition of the house, and the lease. The itemized list included charges

2

for replaced blinds, paint, drywall, doorstops, outlet covers, replaced sheetrock, painting of the whole house, trimming of bushes, ant care, replaced smoke detectors and light bulbs, pest control for roaches, and two $100 charges for holdover rent.

Sandra testified generally regarding the condition of the home when she and Jesus moved in and when they moved out. She offered into evidence a letter from Shamrock dated May 2011 stating that when a Shamrock representative took the Rodriguezes to see the house, they discovered that it had been vandalized and "the window had been broken[, . . .] there were holes punched in the walls and other damage." Sandra further testified that there were roaches in the home when they moved in and they battled them the entire time they lived there. She offered two photographs of a shrub near the front door—one taken when they moved out and the second one taken one month later—and stated that the shrub looked the same one month later as when they moved out and did not appear to have been trimmed. She stated that there was damaged sheetrock caused by a leak behind the washer in a pipe for which Shamrock was responsible and Shamrock had pulled the sheetrock out and provided a metal vent to cover the hole. Sandra also stated she had removed a smoke detector and did not contest that charge. She testified that there were broken blinds, so they purchased new blinds and left them in the house but did not hang them. She further testified that she had the carpet professionally cleaned when they moved out but that some red stains from her daughter's spilled Kool-Aid remained and she did not dispute that additional cleaning was needed. She also testified that she received a refund check from A-TX in the amount of $54 but did not cash it and received a subsequent accounting indicating that the Rodriguezes owed A-TX money.

On cross-examination, Sandra testified that she and Jesus had completed a Move-In Report and provided it to Shamrock in compliance with the lease but did not retain a copy. She also testified that one plank in the fence had been blown down by the wind. She stated that despite a letter from A-TX indicating that the two charges for holding over two months after the expiration of the lease were refunded, she did not receive a refund of those amounts.

Jesus testified that during the inspection A-TX performed before he and Sandra moved out, he informed Sean Smith, one of the inspectors, that they had asked Shamrock to repair the fence because the wind repeatedly blew a board down, but Shamrock did not repair it. He also testified that Shamrock had provided a letter stating that the house had not been painted since 2006, but he did not offer the letter into evidence. Although Jesus did not testify regarding the vandalism, A-TX offered a letter he wrote to them stating that there was writing on the walls and eggs had been thrown on the walls.

Sean Smith testified concerning the inspection he conducted prior to the Rodriguezes' moving out. He stated that the carpet was in "bad shape" and had red, yellow, and black stains and the walls were "very bad" and had spots "like when you rub the walls with your hands." He testified that Jesus informed him "it was from eggs, but, I mean, from what proof." He stated that he had not been in the house prior to conducting the inspection. Smith also testified that there was bird feces on the carpet and wall next to the bird cage. A-TX offered Smith's inspection report that indicated, and Smith testified, that he had rated the carpet as "fair" and the walls as "fair" and "poor." The report also reflected Smith's comment that the carpet had "minor spots" and the fence needed to be repaired.

Harold Croson testified regarding the final inspection that he conducted after the Rodriguezes moved out. He stated that the carpet and walls were in poor condition, there was "a little dirt around," and live insects. He also stated that the condition of the walls was "more than normal wear and tear" but observed that the upstairs was "not as bad." Croson also testified that there were "about three blinds [that] needed to be replaced" and there were new blinds in packages but not hung and he was not sure they were the right size. He testified that Jesus "had the neighborhood child come over while [he] was there and cut the yard" even though he had given up possession of the property at that time. A-TX offered Croson's inspection report, which generally reflected the comments in his testimony, including that the carpet needed stains removed.

Jessica Bullock testified that she was office manager and vice-president of A-TX. She stated that she had unsuccessfully attempted to locate the Move-In Report from Shamrock. She explained that Shamrock informed her that it had transferred all of its records to the subsequent property manager, who then informed her that it had transferred all of the records to A-TX. Bullock testified that the lease required her to go by the Move-In Report and that without it the Rodriguezes had offered no proof of the condition at the time they moved in. She further testified that the cost to "paint the entire house and fix everything" was $1,200 and she divided that between the owner and the tenants. The county court questioned Bullock concerning an invoice A-TX offered into evidence that stated: "Repainted rooms due to extensive marks, damages. Replaced sheetrock, replaced door stops, repainted baseboards from extensive nicks and damages" for a total charge of $600. Bullock stated it was not her understanding that the cost was only $600 and added that some

5

follow-up work had to be done but did not refer to another invoice. Bullock also testified that A-TX did a lot of work that was not charged to the Rodriguezes because it was normal wear and tear.

Following testimony, the county court found that A-TX was entitled to deduct for the labor of installing the blinds and for replacing the smoke detector, doorstops, and outlet covers for a total of $80.96 and that the remaining $1,119.04 should have been refunded. The county court further found that A-TX had failed to prove that the Rodriguezes caused the remainder of the damages charged against them and concluded that A-TX's withholding of the security deposit without any evidence that the Rodriguezes caused the damages was bad faith. The county court awarded $100 and three times the amount wrongfully withheld, for a total of $3,457.12. *See id.* This appeal followed.

## DISCUSSION

**Applicable Law**

The return of security deposits in connection with residential tenancies is governed by subchapter C of Chapter 92 of the Property Code. *See id.* §§ 92.101–.109. Under subchapter C, a landlord is required to refund a security deposit to a tenant within 30 days after the tenant surrenders the property, *id.* § 92.103(a), and may deduct only those "damages and charges for which the tenant is legally liable," *id.* §92.104(a). If a landlord violates this provision in bad faith, the statute provides a remedy of three times the amount wrongfully withheld, $100, and attorney's fees. *Id.* § 92.109(a).[2] "A landlord acts in bad faith when he retains the security deposit in dishonest

---

[2] The county court did not award attorney's fees, and the Rodriguezes do not raise that issue on appeal.

disregard of the tenant's rights." *Pulley v. Milberger*, 198 S.W.3d 418, 428 (Tex. App.—Dallas, 2006, pet. denied) (citing *Reed v. Ford*, 760 S.W.2d 26, 30 (Tex. App.—Dallas 1988, no writ)). Bad faith implies an intent to deprive the tenant of a refund that is lawfully due. *Shamoun v. Shough*, 377 S.W.3d 63, 72 (Tex. App.—Dallas 2012, pet. denied); *Pulley*, 198 S.W.3d at 428; *Hardy v. 11702 Memorial, Ltd.*, 176 S.W.3d 266, 271 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd). It is the landlord's burden to prove that the retention of the security deposit was reasonable. Tex. Prop. Code § 92.109(c).

**Standard of Review**

A-TX challenges the legal and factual sufficiency of the evidence to support the county court's judgment. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). A legal sufficiency challenge may be sustained when the record discloses one of the following situations: (i) a complete absence of evidence of a vital fact; (ii) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (iii) the evidence offered to prove a vital fact is no more than a mere scintilla; or (iv) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. The test is "whether the evidence at trial would enable reasonable and fair-minded people to reach the [judgment] under review." *Id.* at 827. In reviewing factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against

7

the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In a bench trial, the trial judge passes on the witnesses' credibility and the weight to be given their testimony and can accept or reject any witness's testimony in whole or in part. *Bocquet v. Herring*, 972 S.W.2d 19, 22 (Tex. 1998). The trial court may believe one witness, disbelieve others, and resolve inconsistencies in any witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (Baker, J. dissenting) (citing *Texas W. Oil & Gas Corp. v. El Paso Gas Trans. Co.*, 631 S.W.2d 521, 524 (Tex. App.—El Paso 1982, writ ref'd n.r.e.); *Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 639 (Tex. App.—Austin 2012, no pet.). We may not substitute our judgment for that of the trier of fact merely because we reach a different conclusion. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988); *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).

**Legal Sufficiency of the Evidence**

In its first issue, A-TX contends that the evidence was legally insufficient to support the county court's judgment. A-TX argues that the contractual obligation of the Rodriguezes to provide a Move-In Report is necessary contextual evidence that we are required to consider under *City of Keller*, even though it is not favorable to the county court's judgment. *See* 168 S.W.3d at 811 (review of contrary contextual evidence may be necessary to discern lack of supporting evidence). In light of the lease obligation to provide the Move-In Report, A-TX contends, the Rodriguezes' claim that A-TX withheld their deposit is no evidence of the unreasonableness of the charges or that

such charges were made in bad faith. A-TX also cites Sandra's admission that she was responsible for certain damages.

Initially, we observe that in *City of Keller*, the supreme court clarified that we are to disregard contrary evidence only when a reasonable factfinder could do so. *See id.* In any event, we do not construe the contractual obligation to report prior damages in a Move-In Report as evidence contrary to the county court's judgment. Sandra testified that she and Jesus completed the Move-In Report and provided it to Shamrock. In addition, Sandra and Jesus offered testimony and evidence regarding the damages to the home prior to move-in and the charges A-TX made against the deposit. Smith testified that Jesus informed him that there was damage to the walls from eggs. Shamrock's letter describing vandalism at the home when it was shown to the Rodriguezes supports the Rodriguezes' testimony.

Further, in arguing that the Rodriguezes failed to prove that the charges were unreasonable, A-TX inverts the burden of proof with regard to the reasonableness of charges assessed by A-TX. Under section 92.109(c), A-TX had the burden to prove that the charges underlying its retention of the security deposit were reasonable. *See* Tex. Prop. Code § 92.109(c); *see also Hardy*, 176 S.W.3d at 273 (question under section 92.109(a) is whether landlord proved each charge was made in good faith). The only evidence A-TX cites to support the reasonableness of the charges against the deposit was the lease provision requiring a Move-In Report. A-TX contends that in the absence of such a report, A-TX was entitled under the lease to presume there was no damage to the property when the Rodriguezes moved in. However, A-TX offered no evidence to establish the condition of the home when the Rodriguezes moved in or that the

9

Rodriguezes caused the damage, evidence necessary to meet its burden of proving the reasonableness of charging the Rodriguezes for repair work. *See* Tex. Prop. Code § 92.109(c); *Hardy*, 176 S.W.3d at 273; *Shamoun*, 377 S.W.3d at 74. Nor did it offer any evidence to contradict Sandra's testimony that she and Jesus provided the Move-In Report, the Rodriguezes' testimony regarding the pre-move-in vandalism and other causes of damage, or the Shamrock letter supporting their testimony. The county court, acting as factfinder, was the sole judge of the credibility of the witnesses and the weight to be given to their testimony and could have reasonably believed the Rodriguezes' testimony, especially in light of the Shamrock letter. *McGalliard*, 722 S.W.2d at 696; *Seasha Pools*, 391 S.W.3d at 639.

Viewing the evidence in the light most favorable to the county court's judgment, we conclude that there was legally sufficient evidence to support the county court's determination that the charges A-TX assessed against the Rodriguezes[3] were unreasonable—with one exception. *See City of Keller*, 168 S.W.3d at 807; *Miro v. Garner*, 52 S.W.3d 407, 411 (Tex. App.—Corpus Christi 2001, pet. denied) (evidence legally sufficient to support finding that landlord wrongfully retained deposit where there was no evidence extensive damage was fault of tenant); *cf. Pulley*, 198 S.W.3d at 422, 432 (evidence of no damage prior to move-in and installation of new carpet several months prior to move-in sufficient to support finding of reasonableness of charges). Contrary to her testimony regarding the other charges, Sandra testified that her daughter had caused the

---

[3] The Rodriguezes do not complain on appeal of the county court's determination that the charges for installing the blinds and replacing the smoke detector, doorstops, and outlet covers were reasonable, and we reach no conclusion as to the evidence to support that determination. *See* Tex. R. App. P. 47.1.

hard-to-remove red stains, and she did not dispute the charge for carpet cleaning. We therefore conclude that the evidence conclusively establishes that the Rodriguezes caused the stains and was legally insufficient to support the county court's determination that the $107.71 charge for carpet cleaning was unreasonable. *See City of Keller*, 168 S.W.3d at 807.

We further conclude—with the same exception for the carpet cleaning charge— that the evidence was legally sufficient to support the county court's determination that A-TX wrongfully withheld the security deposit. Moreover, the lack of evidence of the condition of the home at move-in or proof that the Rodriguezes caused the damages was sufficient to support the county court's finding of bad faith. *See* Tex. Prop. Code § 92.109(d) (presumption of bad faith); *City of Keller*, 168 S.W.3d at 807; *Miro*, 52 S.W.3d at 410–11 (evidence legally sufficient to support finding of bad faith where no evidence damages caused by tenant)*; see also Hardy*, 176 S.W.3d at 275 (bad faith found where no more than scintilla of evidence landlord was entitled to deductions from security deposit). A-TX, a professional management company, relied solely on the absence of documentation from its own twice-transferred records, attempted to place the burden on the Rodriguezes to prove that they had not caused the damages, and then disregarded the statements of the Rodriguezes and Shamrock regarding the Move-In Report and vandalism to the home. A-TX thus failed to establish that the home was not damaged prior to the Rodriguezes' moving in, that it had reason to believe the Rodriguezes caused the damage, and that it was entitled to retain the deposit. *Cf. Pulley*, 198 S.W.3d at 431 (no bad faith where evidence showed amateur landlord believed he was entitled to retain portion of deposit for extensive damages caused by tenant); *Leskinen v. Burford*, 892 S.W.2d 135, 138 (Tex. App.—Houston [14th Dist.] 1994, no writ) (no bad

11

faith where evidence showed amateur landlord believed he was entitled to retain portion of deposit for damages he believed tenant caused and made many repairs himself to save money). We sustain A-TX's first issue as to the charge for carpet cleaning and overrule it as to the remainder of the charges.

**Factual Sufficiency of the Evidence**

In its second issue, A-TX argues that the evidence was factually insufficient to support the county court's judgment. As evidence of the reasonableness of the charges, A-TX cites to the testimony of Smith, Croson, and Bullock regarding the damage to the home, repairs that were done, photographs admitted as exhibits, and the lease. Again, A-TX inverts the burden of proof and argues that the Rodriguezes produced no evidence that the charges were unreasonable. *See* Tex. Prop. Code § 92.109(c). A-TX further contends that "the only relevant piece of evidence" the Rodriguezes offered was the Shamrock letter, which is "irrelevant" in light of the lease provision requiring the Move-In Report. Finally, A-TX argues that its failure to establish the condition of the home prior to move-in is irrelevant because of the Rodriguezes' obligation to report conditions in the Move-In Report.

Having concluded that the evidence was legally insufficient to support the county court's finding as to the charge for carpet cleaning, we also conclude that the evidence was factually insufficient. *See Cain*, 709 S.W.2d at 176. As to the county court's determination regarding the remainder of the damages, we disagree with A-TX's assertion that the lease provision regarding the Move-In Report renders irrelevant its statutory burden under section 92.109(c) to prove the reasonableness of the charges. *See* Tex. Prop. Code § 92.109(c); *Pulley*, 198 S.W.3d at 426.

12

Assuming without deciding that A-TX could have reasonably charged the Rodriguezes for all of the repairs had the Rodriguezes failed to complete a Move-In Report, A-TX did not establish that they failed to submit the report. Rather, the uncontroverted testimony was that they did submit the report, and A-TX offered no evidence to rebut that testimony. Nor did it establish the condition of the home at move-in or that the Rodriguezes caused the damages. Considering the entire record, we hold that, except as to the charge for carpet cleaning, the evidence was factually sufficient to support the county court's determination that the charges A-TX assessed against the Rodriguezes were unreasonable and that A-TX wrongfully withheld the security deposit. We further hold that the lack of evidence of the condition of the home at move-in or proof that the Rodriguezes caused the damages was factually sufficient to support the county court's finding of bad faith. *See* Tex. Prop. Code § 92.109(d); *Cain*, 709 S.W.2d at 176; *Hardy*, 176 S.W.3d at 275 (bad faith established where evidence did not support charges deducted from security deposit); *Miro*, 52 S.W.3d at 410–11 (evidence factually sufficient to support finding of bad faith where no evidence damages caused by tenant). We sustain A-TX's second issue as to the charge for carpet cleaning and overrule it as to the remainder of the charges.

**Amount of Damages**

In its third issue, A-TX argues that the damage award was excessive and seeks remittitur on three grounds. First, A-TX argues that the county court erred in including the $54.92 A-TX refunded in its calculation of treble damages and seeks remittitur in the amount of $164.76. A-TX also contends that because the evidence was factually insufficient to support the county court's determination that the $107.17 charge for carpet cleaning was unreasonable, the county court erred

13

in including that amount in calculating treble damages and seeks remittitur in the amount of $321.15 based on that charge. Finally, A-TX argues that there was no evidence to support the statutory award of triple damages as to any of the charges because there was no evidence of bad faith.

We analyze a complaint of excessive damages using the same standard of review applicable to other factual sufficiency challenges. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998); *Memon v. Shaikh*, 401 S.W.3d 407, 417, (Tex. App.—Houston [14th Dist.] 2013, no pet.). A court of appeals may exercise its power to suggest a remittitur when an appellant complains that there is insufficient evidence to support an award and the court of appeals agrees but finds that there is sufficient evidence to support a lesser award. Tex. R. App. P. 46.3; *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp.*, 299 S.W.3d 106, 123–24 (Tex. 2009); *Bechtel Corp. v. CITGO Prods. Pipeline Co.*, 271 S.W.3d 898, 922 (Tex. App.—Austin 2008, no pet.).

In this case, the evidence is factually sufficient to support an award including the amount purportedly refunded. Sandra's uncontroverted testimony was that she received the refund check but did not cash it and later received an accounting indicating that the Rodriguezes owed A-TX money. We overrule A-TX's third issue as to the alleged refund amount. Further, as we have already determined, the evidence is also factually sufficient to support a finding of bad faith, which in turn supports an award of treble damages. *See* Tex. Prop. Code § 92.109(a). However, for the reasons discussed above, we agree with A-TX that the evidence is factually insufficient to support the county court's finding that the charge for carpet cleaning was unreasonable. Consequently, the evidence is factually insufficient to support the county court's finding of bad faith as to that charge

or its inclusion of that charge in the calculation of treble damages. *See id.* (landlord who retains security deposit in bad faith liable for $100 plus "three times *the portion of the deposit wrongfully withheld*") (emphasis added). We therefore sustain A-TX's third issue as to the portion of the treble damages awarded that was based on the $107.17 charge for carpet cleaning and overrule it as to the remainder of the damage award.

## CONCLUSION

We affirm the county court's judgment conditioned on the Rodriguezes' filing a remittitur in the county court within thirty days of the date of this opinion, reducing the award of damages by an amount equal to three times the charge for carpet cleaning, or $321.51, and notifying this Court of the filing. *See* Tex. R. App. P. 46.3; *Swinnea v. ERI Consulting Eng'rs, Inc.*, 364 S.W.3d 421, 422 (Tex. App.—Tyler 2012, pet. denied) (suggesting remittitur of award for lost profits where evidence was factually insufficient to support award); *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 889–90 (Tex. App.—Austin 2006, pet. granted, judgm't vacated w.r.m.) (suggesting remittitur of difference between jury's award and highest amount of damages supported by evidence). If the remittitur is filed within thirty days of the date of this opinion, we will reform the county court's judgment and affirm as reformed. Otherwise, we will reverse the county court's judgment and remand this cause for redetermination of treble damages. *See* Tex. R. App. P. 46.3.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed Conditioned on Remittitur

Filed:   October 17, 2013