# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00729-CV

**Meridian Grace, Appellant**

**v.**

**Jessica Stapher Thompson and Marc Thompson, Appellees**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-12-004601, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

Reviewing the evidence under the applicable standard of review, I would conclude that there is a fact issue about whether Grace acted in "bad faith" under section 92.109 of the Property Code. *See* Tex. Prop. Code § 92.109; Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To the extent that the majority reaches this conclusion, I concur in its opinion but respectfully dissent to the remainder of the opinion.

The majority correctly concludes that the statutory presumption applies here. *See* Tex. Prop. Code § 92.109(d) ("A landlord who fails either to return a security deposit or to provide a written description and itemization of deductions on or before the 30th day after the date the tenant surrenders possession is presumed to have acted in bad faith."). The controlling issue then is whether there is sufficient summary judgment evidence to raise a fact issue on the question of bad

faith in the context of the statutory presumption. *See id.*; *see also* Tex. R. Civ. P. 166a(c). "To defeat the presumption of bad faith, the landlord must prove his good faith, i.e., honesty in fact in the conduct or transaction concerned." *Pulley v. Milberger*, 198 S.W.3d 418, 428 (Tex. App.—Dallas 2006, pet. denied). "Evidence that a landlord has reason to believe he was entitled to retain a security deposit to recover reasonable damages is sufficient to rebut the presumption of bad faith created by the Texas Property Code." *Id*. Evidence of "extensive damage . . . to the residence" may also be sufficient to defeat the presumption. *Id*.

The majority distinguishes the bad-faith component of subsections (a) and (b) of section 92.109, concluding that the summary judgment evidence is sufficient to create a fact issue as to whether Grace acted in bad faith when she retained the security deposit but that it is not sufficient to create a fact issue as to whether she acted in bad faith when she failed to timely provide the required information under subsection (b). *See* Tex. Prop. Code § 92.109(a), (b) (describing required information as "written description and itemized list of damages and charges" per subchapter). In the face of conflicting evidence, this bifurcated approach to parse the evidence of bad faith departs from our standard of review from summary judgments and well-established practices in landlord-tenant disputes under the Property Code. *See* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215 (burden on movant to establish entitled to summary judgment as matter of law); *Pulley*, 198 S.W.3d at 430–31 (in appeal from bench trial, considering same evidence, concluding that evidence was legally and factually sufficient to support trial court's findings that landlord did not act in bad faith when he failed to return security deposit or provide itemized list of deductions,

2

and noting that "reasonable excuse is merely one means by which a landlord may rebut the presumption of bad faith").[1]

Summary judgment evidence showed that the amount that Grace spent on the house after the Thompsons moved out exceeded the security deposit, that the parties agreed that Grace could retain $500 of the security deposit, and that she eventually provided an itemization of expenditures and copies of receipts that exceeded the amount of the deposit.[2] *See Pulley*,

---

[1] *See, e.g.*, *Shamoun v. Shough*, 377 S.W.3d 63, 74 (Tex. App.—Dallas 2012, pet. denied) (upholding jury's findings that landlord did not act in bad faith by retaining security deposit); *Williams v. Colthurst*, 253 S.W.3d 353, 361–62 (Tex. App.—Eastland 2008, no pet.) (describing evidence that supported a finding that landlord did not act in bad faith under subsections (a) and (b)); *Hardy v. 11702 Memorial, Ltd.*, 176 S.W.3d 266, 271 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (explaining that "[b]ad faith implies an intention to deprive the tenant of a lawfully due refund"); *Reed v. Ford*, 760 S.W.2d 26, 30 (Tex. App.—Dallas 1988, no writ) (noting that "[b]ad faith requires an intent to deprive the tenant of a refund known to be lawfully due" and concluding that fact issue whether landlord acted in bad faith based on evidence at trial that landlord "suggested to Tenant that [the landlord] would refuse a refund of Tenant's deposit unless Tenant agreed to renew the lease on the terms proposed by [the landlord]").

[2] The Thompsons stated in their reply in support of their summary judgment that Grace "finally provided a document that listed the nature and cost of each deduction." *See Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) ("Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. Any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence."). The Thompsons also listed Grace's deductions in their reply as follows:

| | | |
|---|---|---|
| 1) | Cleaning costs | $496.59 |
| 2) | Damage Repair/Painting | $442.82 |
| 3) | Repainting Converted Garage | $500.00 |
| 4) | Replacement Flooring | $2,304.20 |
| 5) | Replacement Flooring Installation | $800.00 |

They confirm that Grace provided them with "receipts or other documents" for items 2 and 4. Further, in his affidavit attached to the Thompsons' motion for summary judgment, Marc Thompson averred: "We also discussed with Ms. Grace that we would not have time to repaint a room in the house which she had given us permission to paint upon moving in. We understood that she may

3

198 S.W.3d at 428 (noting that evidence that landlord has reason to believe that entitled to retain security deposit to recover reasonable damages or evidence of "extensive damage" may be sufficient to defeat bad-faith presumption). This evidence is sufficient to create a fact issue on the question of bad faith. *See id.*; *see also* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215.

Nonetheless, the majority concludes that the summary judgment evidence is only sufficient to raise a fact issue as to whether Grace acted in bad faith by retaining the security deposit under subsection (a), and not as to her delay in providing the required information under subsection (b). *See* Tex. Prop. Code § 92.109(a), (b). Dispositive to the majority is its conclusion that there was no evidence of "any explanation as to why Grace failed to timely provide the required information." Under the majority's interpretation of subsection (b), a landlord must present evidence of an "explanation" for a delay in providing the required information to create a fact issue as to bad faith irrespective of and separate from evidence that would support a landlord's good faith in withholding a security deposit. *Cf. Pulley*, 198 S.W.3d at 428–31 (listing examples of "means by which a landlord may rebut the presumption of bad faith," noting that "reasonable excuse is merely one means by which a landlord may rebut the presumption of bad faith," and reviewing "evidence, if any, respecting 'a reasonable excuse' in conjunction with other evidence to determine if the evidence is sufficient to rebut the presumption of bad faith").

---

deduct the money needed to complete the repainting from our security deposit, which we understood would not be more than $500."

Grace's affidavit was consistent with this evidence. In her affidavit, Grace testified that the Thompsons "left the Property with considerable damage, including damage to the flooring and interior walls," that "[t]he total amount spent in repairs . . . was $4,043.61, not including an oral agreement for an additional $500 deduction from the security deposit for repainting the converted garage area," that the "cost to repair the damage to the Property caused by Plaintiffs exceeded the amount of their total security deposit," and that "[a]ll money spent on repairs was in good faith."

4

The majority's only cited authority for this novel approach is *Wilson v. O'Connor*, 555 S.W.2d 776, 798 (Tex. Civ. App.—Dallas 1977, writ dism'd). The issue before the court in *Wilson* was whether the trial court in a bench trial erred by awarding treble damages for failure to return the security deposit under the predecessor statute to section 92.109. *Id*. at 778–79.[3] Our sister court reversed and remanded for a new trial, concluding that the trial court erroneously construed the statute and erred by concluding that bad faith had been established as a matter of law. *Id*. at 781–82. The court rejected the trial court's apparent conclusion that bad faith was established as a matter of law by failing timely to either return the security deposit or provide a list of expenditures within 30 days, "regardless of what excuses [the landlord] may have presented for failure to do so." *Id*. at 781. The court did not distinguish between bad faith as to one but not the other, and its conclusion does not support the majority's approach.

Further, even if the majority is correct that evidence of an excuse for the delay in providing the required information under subsection (b) is required to create a fact issue as to bad faith under that subsection, I would conclude that the evidence is sufficient here. *See* Tex. Prop.

---

[3] The court quoted the predecessor statute in pertinent part as follows:

In any court action brought by a tenant under this Act, the landlord bears the burden of proving that his retention of the security deposit or any portion thereof was reasonable. In this court action the landlord is not liable for the penalty, treble damages, or attorneys fees referred to in Subsections (a) and (b) of this section unless the landlord is found to have acted in bad faith. Failure to return a security deposit within 30 days or failure to provide a written description and itemization of deductions within 30 days is prima facie evidence and a presumption that the landlord acted in bad faith.

*Wilson v. O'Connor*, 555 S.W.2d 776, 779 (Tex. Civ. App.—Dallas 1977, writ dism'd) (quoting Tex. Rev. Civ. Stat. art. 5236e, § 4(c) (repealed 1984)).

Code § 92.109(b); *see also* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215 ("When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.").

In the email that Grace sent to the Thompsons in September 2011, Grace provided detailed descriptions of damages to the house, including listing damage to the carpets, vents, a ceiling, a door, the stairs, and walls. After detailing the damages, Grace explained that some of the repairs had not been completed and that she hoped to have a list soon:

> [Wall boards] need to be replaced. . . . Vent cleaning is called for because of this. . . . The doors need to be replaced. . . . We could not find the [dining room lamp] and would like to either have it back or we will replace it. I visited the house when last in Austin and got to know my new tenants. They told me their experience of all the problems with the house and the work that has had to be done to date. Replacement of the carpeting in the two upstairs rooms is necessary. The stairs were in awful condition and need to be repainted as well. . . . We are working on an itemized spread sheet to show you the costs for everything. . . . The price to restore the house from the damage that it received while you were living there will most likely be more than your deposits. Soon we will have your itemized bill. I thought Ashley would have completed this by now . . . (ellipsis in original) but she also has life changes which took up her time, divorce, moving, etc. We will have this all for you shortly.

Taking Grace's statements and explanations in the email as true and indulging every reasonable inference in her favor, she provided excuses for the delay in providing a "written description and itemized list of damages and charges." *See* Tex. Prop. Code § 92,109(b); *Knott*, 128 S.W.3d at 215. She explained that she was relying on another person who was completing the list and had time conflicts and that some of the repairs had not yet been completed. A reasonable inference from the ongoing repairs is that they were affecting Grace's ability to provide a definitive list.

6

For these reasons, I would sustain Grace's issue and reverse and remand the entire case to the trial court for further proceedings.


_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Filed:   July 3, 2014



7