Opinion issued March 11, 2004










     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00814-CV




GREGORY VONGONTARD, Appellant

V.

MISTY TIPPIT, Appellee




On Appeal from the 245th District Court
Harris County, Texas
Trial Court Cause No. 2003-33641




O P I N I O N
          Appellant, Gregory Vongontard, challenges a protective order entered against
him pursuant to the Texas Family Code.


 We consider whether (1) we have
jurisdiction to consider the appeal and (2) there was legally and factually sufficient
evidence to support the order. We affirm.
Jurisdiction
          The State, representing appellee, Misty Tippet,


 contends that we have no
jurisdiction to consider this appeal. We disagree. A majority of the appellate courts
considering the issue have concluded that a protective order is akin to a permanent
injunction, and is, therefore, appealable if it disposes of all parties and issues. See
Ulmer v. Ulmer, 2004 WL 253509 (Tex. App.—Houston [14th Dist.] February 12,
2004, n. p. h.); B. C. v. Rhodes, 116 S.W.3d 878, 882 (Tex. App.—Austin 2003, no
pet.), Kelt v. Kelt, 67 S.W.3d 364, 366 (Tex. App.—Waco 2001, no pet.); Cooke v.
Cooke, 65 S.W.3d 785, 787-88 (Tex. App.—Dallas 2001, no pet.); Streidel v.
Striedel, 15 S.W.3d 163, 164-65 (Tex. App.—Corpus Christi 2000, no pet.); In re
Cummings, 13 S.W.3d 472, 475 (Tex. App.—Corpus Christi 2000, no pet.); Winsett
v. Edgar, 22 S.W.3d 509, 510 (Tex. App.—Fort Worth 1999, no pet.); James v.
Hubbard, 985 S.W.2d 516, 518 (Tex. App.—San Antonio 1998, no pet.).
          Two courts have held that protective orders issued during the pendency of an
ongoing divorce proceeding are interlocutory and not appealable. See In re K.S.L.-C., 109 S.W.3d 577, 579 (Tex. App.—Tyler 2003, no pet.); Bilyeu v. Bilyeu, 86
S.W.3d 278, 282 (Tex. App.—Austin 2002, no pet.). In this case, there is no ongoing 
proceeding. Therefore, the protective order (which enjoins appellant from, among
other things, going within 200 feet of Tippet’s residence or place of business)
disposes of all parties and issues in this case and, according to the authorities cited
above, is appealable.
Background
          Appellant and Misty Tippet had been dating for two and one half years when
they broke up in March 2003. Misty testified that, after coming home from the rodeo,
appellant was drunk, had a “wild look on his face,” backed her into a stall in his barn,
and began calling her names. When appellant’s sister interceded on Misty’s behalf,
appellant began physically scuffling with his sister. Misty testified that she was
scared when appellant backed her against the wall, even though she admitted that he
never touched her that day.
          Two days later, Misty went to appellant’s house to return some of his
belongings. Appellant said that he did not want them “because it wasn’t over.” He
took the keys that Misty had returned, broke one, and threw it.
          A few months later, in March 2003, appellant approached Misty while she was
working at a Chili’s Restaurant, backed her into a corner, and demanded his keys
back. When Misty insisted that she did not have the keys, appellant left. Misty
testified that appellant’s actions that day scared her.
          The next month, June 2003, appellant called Misty numerous times on her cell
phone demanding to know where she was and who she was with. Misty testified that
appellant sounded intoxicated when he called. Appellant again demanded that she
give his truck key back. Misty again told him that she had already given it back and
for him to stop calling her. When Misty hung up on him, appellant immediately
called her again. One night, appellant left a message on Misty’s cell phone that he
was going to “kill the guy” she was with. Again, Misty was frightened by appellant’s
actions. On another occasion, appellant told Misty that, “if [she] wasn’t careful, it
would be fatal, [she] needed to watch who [she] was with.” Misty was very upset by
appellant’s statements. She testified that “[h]e’s a mean violent drunk. When he gets
drunk, he wants to kill everybody.”
          Misty’s father testified that, on two occasions, after Misty received appellant’s
threatening messages, he saw appellant parked across the street from their house in
a white pick-up truck, although he was unable to make out the license, make, and
model of the truck.
          Misty also testified about three incidents in which appellant was physically
violent with her while they were still dating. In June 2002, appellant arrived
uninvited at Misty’s family’s vacation home in Galveston. He was drunk and angry. 
When Misty tried to take his car keys away from him and prevent him from leaving
drunk, appellant pushed her against the car door. Misty’s friend intervened, and
appellant began trying to hit her. When Misty’s father saw appellant, he made him
come inside and stay the night.
          In August 2002, appellant went to see Misty while she was working at a Chili’s
Restaurant. He was upset because she was not off work yet, so he told her “to get off
work then or there would be consequences.” Appellant had been drinking and was
very angry. When Misty told him to go home—that she would be home in a little
while—appellant pushed her against the wall. Misty testified that she was scared
because this was “the first time he had ever done anything in public . . . .”
          The last event of physical violence occurred in October 2002, when appellant
arrived at Misty’s house drunk. Misty told appellant to give her the truck keys
because she was not going to allow him to drive drunk. Appellant became angry and
pushed Misty down on the ground. Misty’s sister ran inside to get their father. 
Misty’s father said that appellant was drunk and that he was going to call appellant’s
parents. Appellant’s parents did not come pick him up, so appellant stayed the night
at Misty’s house.
Sufficiency of the Evidence
          Having determined that an appeal will lie from the protective order, we turn
now to appellant’s complaints regarding the sufficiency of the evidence. At the
conclusion of the hearing on the protective order, the trial court made the following
findings, which are incorporated in the protective order:
The Court finds that the Applicant and Respondent WERE
PREVIOUSLY INVOLVED IN A DATING RELATIONSHIP[.] The
Court finds that family violence has occurred and that family violence
is likely to occur again in the future. The Court finds that Respondent,
GREGORY VONGONTARD, has committed family violence. The
Court finds that the following protective orders are for the safety and
welfare and in the best interest of Applicant and are necessary for the
prevention of family violence.

          In issues one and two, appellant contends that there is legally and factually
insufficient evidence to show that (1) appellant committed acts of dating violence



against Misty, and (2) that appellant would likely commit dating violence against
Misty in the future.
          When the trial court acts as a fact finder, we review its findings under the legal
and factual sufficiency standards. In re Doe, 19 S.W.3d 249, 253 (Tex. 2000). When
a party attacks the legal sufficiency of an adverse finding of an issue on which he did
not have the burden of proof at trial, he must show on appeal that there is no evidence
to support the adverse finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983). We consider only the evidence and inferences that tend to support the finding
and disregard all evidence and inferences to the contrary. Southwest Key Program,
Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex. 2002). If more than a scintilla of
evidence exists to support the finding, the no evidence challenge fails. Formosa
Plastics Corp, U.S.A. v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41,
48 (Tex. 1998). More than a scintilla of evidence exists if the evidence furnishes
some reasonable basis for differing conclusions by reasonable minds about a vital
fact’s existence. Lee Lewis Const., Inc. v. Harrison, 70 S.W.3d 778, 782-83 (Tex.
2001). When a party attacks the factual sufficiency of an adverse finding on an issue
on which he did not have the burden of proof at trial, he must show on appeal that
there is insufficient evidence to support the adverse finding. See Raw Hide Oil &
Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 275-76 (Tex. App.—Amarillo
1988, writ denied). To conduct this review, we examine the entire record and
consider and weigh all the evidence, both in support of, and contrary to, the
challenged finding. See Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Plas-Tex,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We must uphold the
finding unless the evidence that supports it is so weak as to be clearly wrong or
manifestly unjust. See In re King’s Estate, 244 S.W.2d 660, 661 (Tex. 1951); Raw
Hide, 766 S.W.2d at 275-76; Otis Elevator Co. v. Joseph, 749 S.W.2d 920, 923 (Tex.
App.—Houston [1st Dist.] 1988, no writ). The trier of fact is the sole judge of the
credibility of the witnesses and the weight to be given their testimony. GTE Mobilnet
v. Pascouet, 61 S.W.3d 599, 615-16 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied). We will not substitute our judgment for that of the trial court merely because
we might reach a different conclusion. Maritime Overseas Corp. v. Ellis, 971 S.W.2d
402, 407 (Tex. 1998).
          The Family Code defines dating violence as follows:
“Dating violence” means an act by an individual that is against another
individual with whom that person has or has had a dating relationship
that is intended to result in physical harm, bodily injury, assault, or
sexual assault or that is a threat that reasonably places the individual in
fear of imminent physical harm, bodily injury, assault, or sexual assault,
but does not include defensive measures to protect oneself.

Tex. Fam. Code Ann. § 71.0021(a) (Vernon 2002).

A. Past Incidents of Dating Violence
          In issue one, appellant contends that the evidence is insufficient to show that
he committed dating violence against Misty in the past. Although appellant does not
separate his legal and factual sufficiency arguments, we will do so for purposes of
clarity.
          1. Legal Sufficiency
          The evidence, viewed in the light most favorable to the trial court’s finding,
shows that on three occasions while they were dating, appellant pushed Misty. On
all three occasions, he appeared drunk and angry. All three events show actions that
were intended to place Misty in fear of imminent physical harm. Accordingly, we
hold that there is more than a scintilla of evidence to show that appellant had
committed acts of dating violence in the past. Thus, the trial court’s finding on this
issue is supported by legally sufficient evidence.
 
          2. Factual Sufficiency
          In his brief, appellant points out that, on two of the three occasions that
appellant pushed Misty, he was actually invited to spend the night at Misty’s house. 
Therefore, appellant argues that Misty could not have been threatened by his
behavior. The trial court, as fact finder, was free to disagree with appellant’s
characterization of the evidence and to conclude that appellant was invited to spend
the night to prevent him from driving drunk and endangering his own life, as well as
the life of others on the highway. The trial court’s finding that appellant had
committed dating violence is not so weak as to be clearly wrong or manifestly unjust. 
Thus, the trial court’s finding on this issue is supported by factually sufficient
evidence.
          We overrule issue one.
B. Likelihood of Future Incidents of Dating Violence
          In issue two, appellant contends that there is legally and factually insufficient
evidence to show that he was likely to commit acts of dating violence in the future. 
We disagree.
          1. Legal Sufficiency
          The evidence, viewed in the light most favorable to the trial court’s finding,
shows that, after breaking up with Misty, appellant twice approached her while drunk
and backed her into a corner. On both occasions Misty was frightened. Appellant
also continued to call Misty and threaten her, telling her on one occasion that a
mistake on her part could prove “fatal.” Appellant also threatened to kill Misty’s new
boyfriend. On two occasions after the break-up, Misty’s father saw appellant sitting
outside their house in a pick-up truck. In light of appellant’s violent past with Misty, 
the trial court could reasonably conclude that it was likely that appellant, if not
enjoined, would commit further acts of dating violence against Misty in the future. 
Thus, the trial court’s finding on this issue is supported by legally sufficient evidence.
          2. Factual Sufficiency
          Appellant, however, points out that, when asked whether she believed appellant
was going to leave her alone, Misty replied, “I really don’t know.” However, in her
next statement, Misty testified that she believed that the violence was likely to
continue unless the judge granted a protective order.
          Appellant also argues that Misty’s father’s testimony about seeing appellant
parked across the street from their house was not credible because Mr. Tippet testified
that he had poor vision and was not able to give the make, model, or license number
of the truck that he had seen. However, in his next statement, Mr. Tippet testified that
his vision was “good [enough] to recognize someone that’s been to my house on
several occasions.”
          The trial court is the sole judge of the credibility of the witnesses and the
weight to be given their testimony. GTE Mobilnet v. Pascouet, 61 S.W.3d at 615-16. 
The evidence supporting the trial court’s finding that appellant would likely commit
acts of dating violence against Misty in the future is not so weak as to be clearly
wrong or manifestly unjust. Thus, the trial court’s finding on this issue is supported
by factually sufficient evidence.
          We overrule point of error two.
          We affirm the protective order of the trial court.
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.