

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00237-CV

### IN THE INTEREST OF A.W.R., A CHILD

**From the 378th District Court
Ellis County, Texas
Trial Court No. 62,517D**

## MEMORANDUM OPINION

The trial court granted an application for protective order sought by Marilyn Rushing against her ex-husband, John Rushing, for alleged abuse of their son, A.W.R. John challenges: (1) the constitutionality of sections 81.005 and 81.006 of the Family Code; (2) the denial of his motion to re-open evidence; and (3) the factual sufficiency of the evidence to support the trial court's finding of family violence.[1] We affirm.

---

[1]   John filed a first amended motion and objection to informalities in the record, complaining of a hearing transcript included in Marilyn's appendix. Because this transcript is not part of the appellate record, we cannot consider it. *See Mitchell v. Citifinancial Mortg. Co.*, 192 S.W.3d 882, 883 (Tex. App.—Dallas 2006, no pet.); *see also GMAC v. Fleetwood Enters.*, No. 10-08-00055-CV, 2009 Tex. App. LEXIS 1913, at *6 n.1 (Tex. App.—Waco Mar. 18, 2009, no pet.) (mem. op.). John's motion is granted.

## CONSTITUTIONAL CHALLENGE

In issue one, John contends that sections 81.005 and 81.006 of the Family Code violate due process and equal protection rights.

An applicant for a protective order may be represented by either a prosecuting attorney or a private attorney. *See* TEX. FAM. CODE ANN. § 81.005(a) (Vernon 2008); *see also* TEX. FAM. CODE ANN. § 81.006(1)-(2) (Vernon 2008); *Ford v. Harbour*, No. 14-07-00832-CV, 2009 Tex. App. LEXIS 1796, at *17 (Tex. App.—Houston [14th Dist.] Mar. 17, 2009, no pet.) (mem. op.). Marilyn is represented by a private attorney.

John argues that non-movants have greater rights when a prosecutor represents the applicant. Specifically, per Article 2.01 of the Code of Criminal Procedure, a prosecutor must disclose exculpatory evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 2.01 (Vernon 2005). A private attorney has no such duty. Thus, John maintains that non-movants are treated disparately depending on the type of attorney representing the applicant. By way of example, he points to the "silver platter doctrine," which allowed evidence seized by State officers during an illegal search, in which federal officers did not participate, to be admitted in a federal criminal trial. *See Elkins v. U.S.*, 364 U.S. 206, 208, 80 S. Ct. 1437, 1439, 4 L. Ed. 2d 1669 (1960) (abolishing "silver platter doctrine").

Marilyn contends that a protective order is a civil proceeding to which the Code of Criminal Procedure does not apply. John argues that protective orders have criminal and quasi-criminal consequences. *See* TEX. GOV'T CODE ANN. § 411.172(a)(12) (Vernon Supp. 2009) (Ineligibility to obtain a concealed handgun license or carry a concealed

handgun); *see also* TEX. FAM. CODE ANN. § 86.0011 (Vernon 2008) (Requiring entry of the protective order into the state-wide law enforcement information system).

The Code of Criminal Procedure applies to criminal proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 1.02 (Vernon 2005). Chapter 81 of the Family Code governs protective orders rendered when family violence has occurred. *In re Skero*, 253 S.W.3d 884, 886 (Tex. App.—Beaumont 2008, orig. proceeding); *see* TEX. FAM. CODE ANN. §§ 81.001 et. seq. (Vernon 2008). "An application for a protective order is a civil matter" and is "in the nature of a civil injunction." *Amir-Sharif v. Hawkins*, 246 S.W.3d 267, 271 (Tex. App.—Dallas 2007, pet. dism'd) (Declining to apply Article 46B of the Code of Criminal Procedure, *i.e.*, competency to stand trial, to protective orders); *Harris v. State*, 164 S.W.3d 775, 780 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see Baxter v. Texas Dep't of Human Res.*, 678 S.W.2d 265, 267 (Tex. App.—Austin 1984, no pet.) (Declining to apply Article 38.23 of the Code of Criminal Procedure, *i.e.*, the exclusionary rule, to termination proceedings).

Because protective orders are civil proceedings, they are governed by the Family Code, not the Code of Criminal Procedure. *See Amir-Sharif*, 246 S.W.3d at 271; *see also Baxter*, 678 S.W.2d at 267; *Harris*, 164 S.W.3d at 781. Thus, we cannot say that a non-movant is treated disparately when the applicant is represented by a private attorney versus a prosecuting attorney. We overrule issue one.

**FAILURE TO REOPEN EVIDENCE**

In issue two, John challenges the denial of his motion to reopen the evidence to introduce a report by the Grapevine Police Department.

When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time. TEX. R. CIV. P. 270. In determining whether to permit additional evidence under Rule 270, a court should consider: (1) the movant's diligence in obtaining the additional evidence; (2) the decisiveness of this evidence; (3) whether the reception of the evidence could cause any undue delay; and (4) whether the granting of the motion could cause any injustice. *McCuen v. Huey*, 255 S.W.3d 716, 738 (Tex. App.—Waco 2008, no pet.) (quoting *Saunders v. Lee*, 180 S.W.3d 742, 745 (Tex. App.—Waco 2005, no pet.)).

At the protective order hearing, Dr. Thomas Deacon testified that, in December 2008, he examined A.W.R. for injuries to his eye and mouth. A.W.R. claimed to have been slapped by John. Deacon diagnosed A.W.R. with a lip hematoma. Clinical social worker Arlette Werthmann testified that she spoke with John who thought he might have struck A.W.R. in the eye with his elbow while wrestling with A.W.R.

John later filed a fourth amended motion to reopen, explaining that he received a report from the Department of Protective and Regulatory Services on May 12, 2009, which alerted him to a Grapevine Police Department report regarding the 2008 incident. He received the police report on May 15. In the report, Detective D.W. Easley stated that Dr. J. Coffman reviewed photographs of A.W.R.'s injuries and opined that they were "not consistent with a slap," but the "black eye was more consistent with a punch or elbow hitting the eye." Based on this opinion, the Tarrant County District Attorney's Office told Easley that a charge of injury to a child would not be accepted.

John contends that Easley's report shows that the 2008 incident is not abuse and is inconsistent with A.W.R.'s allegations. Marilyn contends that the trial court properly denied the motion because John failed to show either diligence or decisiveness.

John contends that he sent several requests for the report and filed prompt motions to reopen. However, he cannot show that the evidence was unavailable or could not have been available at the time of the hearing. *See Naguib v. Naguib*, 137 S.W.3d 367, 373 (Tex. App.—Dallas 2004, pet. denied); *see also In the Interest of A.A.E.*, No. 13-03-00528-CV, 2005 Tex. App. LEXIS 4419, at *6 (Tex. App.—Corpus Christi June 9, 2005, no pet.) (mem. op.). According to Easley's report, John and his attorney met with Easley on January 8. Easley spoke with Dr. Coffman on January 22. The hearing occurred on January 23. John knew about Easley's investigation. He could have called Easley to testify at the hearing. Moreover, John filed his second amended motion to reopen, with attached police records, nearly four months after the hearing. Third and fourth amended motions followed. A trial court does not abuse its discretion by refusing to reopen a case after evidence is closed, particularly where the party seeking to reopen has not shown diligence in attempting to produce the evidence in a timely fashion. *McNamara v. Fulks*, 855 S.W.2d 782, 784 (Tex. App.—El Paso 1993, no pet.).

Additionally, the excluded evidence does not address A.W.R.'s lip injury diagnosed by Deacon. John presented some evidence, through Werthmann, suggesting that he did not intentionally strike A.W.R. in the eye. This testimony contradicts Dr. Deacon's opinion. Thus, the excluded evidence would merely add to the already conflicting evidence regarding whether John intentionally struck A.W.R. On the other

hand, the evidence could also support a finding that A.W.R. was intentionally harmed by a "punch." The evidence is not decisive. *See In re Estate of Huff*, 15 S.W.3d 301, 309 (Tex. App.—Texarkana 2000, no pet.) (Additional evidence was not decisive because "Intervenors had already offered some evidence of their attorney's fees at trial."); *see also Naguib*, 137 S.W.3d at 373 ("[A]dditional evidence is not determinative, but cumulative."); *Caro v. Sharp*, No. 03-02-00108-CV, 2003 Tex. App. LEXIS 4943, at *20 (Tex. App.—Austin June 12, 2003, pet. denied) (mem. op.) (Appellants failed to "demonstrate[] how contradicting already contradicted testimony would be decisive.").

Because John cannot satisfy all four requirements for reopening the evidence, we cannot say that the trial court abused its discretion by denying John's motion to reopen. We overrule issue two.

## FACTUAL SUFFICIENCY

In issue three, John challenges the factually sufficiency of the evidence to show that family violence is likely to occur in the future.

### Applicable Law

At the close of a hearing on an application for a protective order, the court shall find whether: (1) family violence has occurred; and (2) family violence is likely to occur in the future. TEX. FAM. CODE ANN. § 85.001(a) (Vernon 2008). If the trial court finds that family violence has occurred and is likely to occur in the future, the trial court shall render a protective order. *See id*. at § 85.001(b)(1); *see also* TEX. FAM. CODE ANN. § 81.001. "[E]vidence that a parent has engaged in abusive or neglectful conduct in the past

permits an inference that the parent will continue this behavior in the future." *In the Interest of T.L.S.*, 170 S.W.3d 164, 166 (Tex. App.—Waco 2005, no pet.).

## Analysis

Dr. Deacon testified that, on December 29, 2008, A.W.R. claimed that John slapped him. Deacon observed a two-centimeter purple area on the left lower lip. He saw no dark areas on the eyes. Photographs of A.W.R.'s injuries showed a bruise or contusion. He diagnosed A.W.R. with a lip hematoma and suggested notifying the Department. Marilyn filed her application for protective order on January 7, 2009.

**Prior Acts of Violence Involving A.W.R.**

In July 2002, Dr. Deacon observed linear marks on A.W.R.'s bottom. A.W.R. claimed to receive spankings from his step-mother and John. In August, Deacon spoke with the Department. In a letter to the trial court, Patti Stovall with the Department ruled the incident "unable to determine." A.W.R. could not recall his last spanking. John admitted spanking A.W.R, but denied leaving marks. He agreed not to spank A.W.R. during visits. A.W.R.'s teacher and day care director both stated that his behavior was no different after visits with John, that he was aggressive, and that he had behavioral problems. Marilyn claimed that A.W.R. is afraid of John and does not want to visit him.

John contends that this incident cannot be attributed to him because (1) the evidence does not show whether A.W.R.'s bruising resulted from spankings given by him, his wife, or both; and (2) the Department did not find the incident to be significant. Stovall's letter, however, contains John's admission to spanking A.W.R. The record

does not explain why the Department waited until August to contact Deacon. Nevertheless, the Department could not conclude that the incident did not occur. *See Comer v. Tex. Dep't of Protective & Regulatory Servs.*, No. 03-03-00564-CV, 2004 Tex. App. LEXIS 10759, at *5 n.6 (Tex. App.—Austin Dec. 2, 2004, pet. denied) (mem. op.) ("The Department marks cases 'unable to determine' when it can neither substantiate nor rule out an allegation."); *see also* 40 TEX. ADMIN. CODE § 700.511(a)(4), (b)(4) (2010).

A second incident occurred in February 2003. According to Stovall, red marks were seen on A.W.R.'s thighs. A.W.R. claimed that John spanked him. He stated that John visited him at school the day after the spanking. He was nice to John for fear that John would spank him. A.W.R. told Stovall that he would be happy not to visit John because John "lies like the devil," and because Marilyn does not want him to visit. A.W.R.'s teacher told Stovall that A.W.R. did not appear to be afraid of John, but had winked and smiled at John. Marilyn told Stovall that A.W.R. does not want to visit John because of how he is treated. John told Stovall that, because of prior allegations, he checks A.W.R. for marks before returning him to Marilyn. John denied spanking A.W.R. and told Stovall that A.W.R. often plays outdoors during visits.

A third incident occurred in April 2007. According to Deacon, A.W.R. claimed that his "dad" struck his back and stomach. Deacon observed tenderness on the trunk, scapula, and left thoracic area. He diagnosed A.W.R. with back and side pain due to trauma. On cross-examination, Deacon admitted that A.W.R. also refers to his step-father as his "dad." He testified that if John were out of the country during this time, it would be difficult for him to be the perpetrator.

John contends that this incident cannot be attributed to him because (1) he was out of the country during this time; and (2) the record is unclear as to which "dad" struck A.W.R.  However, information that John was out of the country was presented through his attorney during cross-examination of Dr. Deacon.  It is not evidence.  *See Collier Servs. Corp. v. Salinas*, 812 S.W.2d 372, 377 (Tex. App.—Corpus Christi 1991, no pet.).  Moreover, as factfinder, the trial court bore the burden of assessing the credibility of the witnesses and resolving any conflicts in the evidence.  *See In the Interest of M.G.M.*, 163 S.W.3d 191, 202 (Tex. App.—Beaumont 2005, no pet.); *see also Vongontard v. Tippit*, 137 S.W.3d 109, 113 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  In doing so, the trial court could have determined that John, not the step-father, struck A.W.R.

**Prior Acts of Violence Involving Unrelated Individuals**

Colleen Tobey with the Department testified that there are other victims from other counties who claim to have been abused by John.  She explained that the findings from those counties are consistent with her findings of abuse.

In her letter, Stovall described a December 2002 incident, involving a physical altercation between John and his former step-son.  The step-son alleged that John "grabbed him by his collar, put his leg behind him and slammed him to the ground."  John claimed that he was grabbed by the collar and he and the step-son both fell to the ground.  The step-son claimed to have sprained his back, but no marks were left.  The Department found the incident "unable to determine."  *See Comer*, 2004 Tex. App. LEXIS 10759, at *5 n.6; *see also* 40 TEX. ADMIN. CODE § 700.511(a)(4), (b)(4).

**A.W.R.'s Credibility**

Jack Rushing, John's brother, testified that he would not be surprised if A.W.R.'s 2008 injury resulted when he and Jack's daughter collided while playing during a Christmastime visit. He testified that A.W.R. also played outside on the trampoline.

Werthmann testified that John told her that he was wrestling with A.W.R. and may have struck him in the eye with his elbow. She suggested the possibility of parental alienation, explaining that A.W.R. may be parroting information or quotes from Marilyn. She testified that when a child feels pressure to choose sides, he may experience ailments and aggression and may invent situations to avoid visitation. She admitted that Marilyn may be trying to protect A.W.R. Werthmann lacked enough material to determine whether parental alienation is occurring.

Deacon admitted that A.W.R. has a history of unexplained fever and other ailments. He testified that a child may lie about injuries and that A.W.R.'s version of the 2008 events could be an attempt to please Marilyn. He did not suspect that A.W.R. was being coerced or coached.

Tobey testified that she has interviewed children in the past and had no reason to believe that A.W.R.'s story is fictitious. Nor had the case worker ever indicated such a belief. Tobey testified that she received no information refuting A.W.R.'s statements, but admitted that John has not been interviewed by the Department.

In her letter, Stovall stated, "At this time the investigation has not found significant actions to warrant a request to the parents to modify the existing orders to

ensure the safety of the child." She explained that the "injuries are not substantial and the child's actions do not match his statements in regards to his father."

The trial court was in the best position to evaluate the credibility and weight of A.W.R.'s story and was entitled to believe that his accounts of the relevant events were truthful. *See M.G.M.*, 163 S.W.3d at 202; *see also Vongontard*, 137 S.W.3d at 113.

**Opinions Regarding Abuse**

Tobey testified that there is a history of abuse and A.W.R. had made statements of abuse, such as being hit by John. She opined that A.W.R. has been physically abused by John. In fact, Tobey testified that the Department would be forced to intervene had Marilyn failed to take action to protect A.W.R. Deacon also opined that A.W.R. was in an abusive situation.

Werthmann strongly recommended reinitiating contact between John and A.W.R. under the guidance of a therapeutic person. She noted that A.W.R. responds to John in a day care setting and through emails. She admitted that A.W.R. could also be afraid, but she saw that A.W.R. wants a relationship with John. She did not believe that A.W.R. was communicating in such a way as to indicate otherwise. Werthmann explained that John shows a compromising attitude and no concern about A.W.R. being with Marilyn. This is the type of person that she would normally advocate placing the child with because that person is more willing to foster visitation and communication.

Again, as trier of fact, the trial court bore the burden of weighing the credibility of the witnesses and resolving any conflicts in the evidence. *See M.G.M.*, 163 S.W.3d at

202; *see also Vongontard*, 137 S.W.3d at 113. The trial court was entitled to resolve the conflicting opinions of abuse either for or against John.

**Summary**

After considering and weighing all the evidence, we conclude that the trial court's finding that family violence will likely occur in the future is not "so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust." *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied); *see T.L.S.*, 170 S.W.3d at 166. Because the evidence is factually sufficient, we overrule issue three.

## CONCLUSION

Having overruled John's three issues, we affirm the trial court's order.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed August 11, 2010
[CV06]