**Opinion filed February 16, 2017**



### In The

# Eleventh Court of Appeals

_____

## No. 11-15-00061-CV

_____

## CURTIS WAYNE TEER, Appellant
## V.
## PAULA NEAL, Appellee

**On Appeal from the County Court at Law No. 2
Midland County, Texas
Trial Court Cause No. FM-58,485**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a protective order issued by the trial court against Appellant, Curtis Wayne Teer. In two issues, Appellant asserts (1) that the trial court abused its discretion when it issued the order by default and refused to grant a new trial and (2) that the evidence was insufficient to show that violence would likely occur in the future. *See* TEX. FAM. CODE ANN. §§ 81.001, 85.001(a)(1) (West 2014). We affirm.

### Background Facts

On February 5, 2015, Paula Neal filed an application for a protective order against Appellant. The application was supported by Neal's affidavit. The trial

court entered a temporary restraining order the next day. On February 18, the trial court held a hearing on the application and signed the final protective order from which Appellant appeals.

Although Appellant was served with a citation in this case on February 10, he did not appear for the February 18 hearing, nor did he file an answer or any motion prior to the hearing. When the hearing began, the trial court noted that a citation had been duly served upon Appellant at the detention center in Midland County. The assistant district attorney stated at the February 18 hearing that Appellant "is currently residing in the Midland County jail and did not make a request to appear." The hearing proceeded without Appellant.

Neal was the only witness to testify at the hearing. She testified about her relationship with Appellant and about his past violent behavior. Neal met Appellant in 2012, and Appellant moved into Neal's house in the fall of 2012. They lived together for about nine or ten months. Neal said that, during their dating relationship, Appellant "was very violent." Neal estimated that Appellant had physically abused her on fifteen to twenty occasions. She had called the police at least twice after being assaulted by Appellant: once in May 2013 and once in October 2013.

Neal described the October 2013 assault, which occurred shortly after the couple's breakup. Appellant called and asked Neal to put his coat next to the gas meter in the alley. When Neal went outside with the coat, Appellant was in the alley waiting for her. Neal said that Appellant was "very angry" because she had had his phone taken off her family plan. Appellant followed Neal into the house and proceeded to hit, slap, and choke her. The assault lasted several hours. The next morning, Neal called 9-1-1 and filed a police report. The police took photographs of Neal's injuries that morning, and those photographs were admitted into evidence at the hearing.

Neal also testified about a September 2013 assault that occurred when she changed the locks. When asked what happened during that incident, Neal said: "Same thing he always did[:] pull my hair, slap me, rape me, cuss me, call me everything in the book."

Shortly after the October 2013 incident, Appellant moved to Arizona. He was later arrested and, at the time of the February 18 hearing, was in jail awaiting trial on charges of assault family violence by strangulation for the October 2013 assault on Neal. While he was in jail, Appellant sent Neal letters and attempted to call her several times—as recently as one month prior to the February 18 hearing. Neal testified that she was still afraid of Appellant at the time of the hearing and feared that, if Appellant were to be released from jail, he would hurt her again. The assistant district attorney explained the potential for Appellant to be released from jail in the near future even if convicted of the charged offense.

At the end of the hearing, the trial court found that family violence had occurred "without a doubt" and that it is likely to occur in the future. The trial court noted that Appellant "seems to have a repetitive vein about him."

*Analysis*

In his first issue, Appellant argues that the trial court abused its discretion when it entered the final protective order by default and when it refused to grant a new trial. Appellant specifically asserts in his first issue that his failure to appear or file an answer was neither intentional nor the result of conscious indifference but was due to mistake or accident, that he had a meritorious defense, and that the granting of a new trial would not have harmed Neal.

First, we disagree with Appellant's assertion that the trial court abused its discretion when it held a hearing and entered the final protective order in Appellant's absence. Appellant stated in a motion that he filed after the issuance of the protective order that he had wanted to appear at the hearing but that no arrangements had been

3

made for him to be transported from the jail. Although an inmate cannot be denied access to the courts based upon his status as an inmate, an inmate does not have an absolute right to be physically present in a civil action; he must request a bench warrant and must justify the need for his presence. *In re Z.L.T.*, 124 S.W.3d 163, 165–66 (Tex. 2003). An inmate may also appear in a civil action by other means, such as by telephone. *See id.* At the time of the hearing in this case, Appellant had not filed a request to be present or to appear by some other means.

Second, we observe that Appellant's arguments in his first issue are based on the well-established *Craddock* elements for setting aside a default judgment. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). There are three elements to the *Craddock* test: (1) the failure of the defendant to answer or appear was not intentional or the result of conscious indifference on his part, but was due to a mistake or an accident; (2) the motion for new trial sets up a meritorious defense; and (3) the granting of the motion for new trial will occasion no delay or otherwise work an injury to the plaintiff. *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 82–83, 85 (Tex. 1992). When a defaulting party moves for a new trial and meets all three elements of the *Craddock* test, a trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009).

Although Appellant timely challenged the protective order in a postjudgment motion for new trial,[1] he did not satisfy the three elements of the *Craddock* test. Under the second element of *Craddock*, the defaulting defendant's motion for new trial must set up a meritorious defense. *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966). To do so, the defendant must allege facts in his motion that "in law would

---

[1]We note that Appellant styled his motion as a motion in arrest of judgment. The trial court treated Appellant's motion in arrest of judgment, along with a letter that Appellant sent to the trial court, as a motion for new trial.

constitute a defense" to the cause of action, and the motion must be supported by affidavits or other evidence constituting prima facie proof of the defendant's meritorious defense. *Id.* The court in *Ivy* stated that these requirements are "necessary to prevent the reopening of cases to try out fictitious or unmeritorious defenses." *Id.* Appellant did not support his motion with an affidavit, nor did he allege facts that would constitute a defense. In this regard, he merely asserted in his motion and in his letter that there were inconsistencies in Neal's prior statements. Appellant did not meet the requirements of the second element of *Craddock*. Additionally, we note also that Appellant did not mention the third *Craddock* element in his motion—that Neal would not be injured by the granting of a new trial.

For the above reasons, we hold that the trial court did not abuse its discretion when it held the hearing in Appellant's absence, issued the final protective order by default, and overruled Appellant's motion for new trial. We overrule Appellant's first issue.

In his second issue, Appellant challenges the sufficiency of the evidence to support the trial court's finding that family violence would likely occur in the future.[2] At the outset, we note that the intermediate courts of appeals disagree as to the standard of review to be applied when reviewing the sufficiency of the evidence to support the issuance of a protective order. *See St. Germain v. St. Germain*, No. 14-14-00341-CV, 2015 WL 4930588, at *2 n.1 (Tex. App.—Houston [14th Dist.] Aug. 18, 2015, no pet.) (mem. op.). *Compare In re Epperson*, 213 S.W.3d 541, 542 (Tex. App.—Texarkana 2007, no pet.) (applying abuse of discretion standard of review because protective order provides injunctive relief), *with Ulmer v. Ulmer*,

---

[2]We note that, to the extent that Appellant challenges the temporary protective order, we do not have jurisdiction to consider his complaint because the temporary protective order was superceded by a final protective order. *See Ford v. Harbour*, No. 14-07-00832-CV, 2009 WL 679672, at *2 (Tex. App.—Houston [14th Dist.] Mar. 17, 2009, no pet.) (mem. op.).

130 S.W.3d 294, 296–97, 299–300 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (recognizing that protective order provides injunctive relief but applying the legal and factual sufficiency standard of review). However, we have previously stated that we will review sufficiency challenges in this type of case "under the traditional standard of review" for sufficiency challenges. *Burt v. Francis*, No. 11-14-00244-CV, 2016 WL 4574286, at *3 (Tex. App.—Eastland Aug. 25, 2016, no pet.) (citing *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) (applying the legal and factual sufficiency standard in a case under Section 33.004(i) of the Family Code where the statute provided that court "shall" enter an order under certain circumstances); *Vongontard v. Tippit*, 137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet.)).

In a legal sufficiency challenge, we view the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 807, 827. If there is any evidence of probative force to support the finding, we will overrule the no-evidence challenge. *See Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). In a factual sufficiency challenge, we must consider all of the evidence and determine whether the evidence in support of the findings is so weak as to be clearly wrong and unjust or whether the findings are so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

Under the sections of the Family Code that are relevant to this case, a court shall render a protective order if the court finds that family violence (1) has occurred and (2) is likely to occur in the future. FAM. §§ 81.001, 85.001. Appellant contends

that the evidence is insufficient to show the second element—that family violence is likely to occur in the future. We disagree.

Neal testified about Appellant's prior violent conduct toward her and about his then-recent attempts to contact her. In a letter that Appellant sent to Neal from jail, Appellant stated:

> It is Thursday evening and I just got off the phone with you. How ironic that I'd just come back from Anger Management . . . because the way you spoke to me was sure enough to make <u>anyone</u> angry. And it's not just the way things are between us now – your attitude towards me for the wrong I've done – you began to snap at me and speak to me that way soon after we started living together. I just didn't respond badly . . . at first . . . (ellipses and emphasis in original).

Neal was afraid that, if Appellant were released from jail, he would harm her again. The record showed that Appellant could have been released at any time. Neal's testimony indicated that she was repeatedly assaulted by Appellant and that those assaults were quite violent. Viewing the evidence in the light most favorable to the trial court's judgment, we conclude that the evidence supports the trial court's determination that family violence was likely to occur in the future. *See In re Epperson*, 213 S.W.3d at 543–44 (upholding trial court's determination that family violence was likely to occur in the future based upon evidence of the defendant's past, continuing pattern of behavior). As noted by the court in *Epperson*: "Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *Id.* at 544. We hold that the trial court reasonably could have concluded that Appellant was likely to commit family violence in the future. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY

JUSTICE

February 16, 2017

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.